ILLINOIS SURETY CO. v. STANDARD UNDERGROUND CABLE CO.

(Circuit Court of Appeals, Third Circuit. January 5, 1917.)

No. 2178.

1. EVIDENCE ☞595—POSITIVE TESTIMONY AND GENERAL INFERENCES.

Direct and positive testimony, the good faith of which is undisputed, may not be overcome by inferences of the most general character, unsupported by a single detail.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2444, 2445; Dec. Dig. ☞595.]

2. PRINCIPAL AND SURETY ☞97—RELEASE—CHANGES IN CONTRACT.

Changes in the principal's contract, made before and with reference to which its surety's obligation was assumed, do not release the surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 146–168; Dec. Dig. ☞97.]

3. APPEAL AND ERROR ☞999(1)—REVIEW—FINDINGS OF FACT.

Any dispute as to material changes prejudicial to the surety having been made in the principal's contract after the surety became bound is settled by the verdict on definite proper instructions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3915, 3917–3921; Dec. Dig. ☞999(1).]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Standard Underground Cable Company against the Illinois Surety Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Walter Lyon and A. V. D. Watterson, both of Pittsburgh, Pa., for plaintiff in error.

William Watson Smith, James I. Marsh, and Gordon & Smith, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. In this action the Cable Company, a Pennsylvania corporation, recovered a judgment against the Surety Company, a corporation of Illinois, on a bond of suretyship. The facts are as follows:

On June 12, 1911, David Dick & Sons, Limited, a Canadian corporation, agreed in writing to erect a building for the Cable Company in the city of Hamilton, Ontario. All the labor was to be done by the Dick Company, and all the material furnished, except the structural steel; this the Cable Company itself was to obtain from some steel maker, and deliver on the ground. The building was to be finished by October 15 under penalty for delay. The price was $69,250, and 80 per cent. in value of the work and of the material delivered was to be paid monthly on the architect's estimate, and the balance was payable not long after completion of the job. The agreement also provided in effect that the Cable Company should not be held liable to any contractor for the delay of a prior contractor, but, in case such delay should keep the subsequent contractor out of possession, the architect should allow him additional time to complete his own contract. The Cable Company was to supply the steel complete by August 7. In compliance with this obligation the Cable Company contracted with the Hamilton Bridge Works for the manufacture of the steel, but deliveries were delayed beyond the contract time. About 90 per cent. of it, however, was on the ground by October 12, and all except 35 pounds by November 10, and the architect in charge testified that, even if all of it had been available by August 7, the Dick Company would not have been ready to erect it, and would not have suffered more than a week's postponement. The manager of the Dick Company denied this, and testified that if the steel had been delivered in due time the building could have been erected by October 15. According to the Cable Company's evidence, the default in delivery was due, at least in part, to the Dick Company's success in urging the Hamilton Company to make and deliver first the steel needed for a job at Welland, on which also the Dick Company was the contractor.

As just stated, only part of the steel had been delivered by August 7—about one-fifth, in fact—and the bond in suit was given in that condition of affairs, the Dick Company and both parties to this suit either having actual knowledge thereof or being chargeable with knowledge. The instrument is dated August 11, and—after reciting that "the

above bounden David Dick & Sons, Limited, have entered, or is about to enter, into a contract" with the Cable Company for the erection of the building in Hamilton—contains the usual conditions. The Dick Company continued the work until the latter part of November, when financial difficulties compelled it to retire. Notice to this effect was given to the Cable Company, and the Dick Company was dismissed as contractor on December 4. As soon as the Cable Company received notice of the contractor's embarrassment, it communicated with the Surety Company and asked two or three times for advice or suggestion, saying that if the Surety Company took no action the Cable Company would complete the building and would look to the bond for redress. The Surety Company paid no attention to these communications, whereupon the Cable Company accepted the lowest bids it could obtain. For reasons not now important, the completion of the work was delayed until June, 1912.

While the Dick Company was still going on with the contract, it received four certificates from the architect, dated August 1, September 1, October 2, and November 1, respectively, and upon these was paid $54,842. The architect testified without contradiction that this amount represented 80 per cent. in value of the work done and of the materials on the premises. There was no dispute that (after the contract price had been properly reduced by several items) the amount thus paid was about $100 less than 80 per cent. of the reduced price. The Cable Company sought to recover several items of loss, aggregating more than $30,000, but the verdict is evidently confined to the sum paid out in excess of the full contract price.

The Surety Company's chief defenses were: (1) Overpayment to the Dick Company; and (2) the delay in delivering the steel. The court charged that there was no evidence of overpayment, as the architect's estimates were not attacked, and as the Cable Company had accepted them as correct, but submitted nevertheless the question whether the payments had in fact done the surety harm. The court also charged that under the contract the delay in delivery would entitle the Dick Company to an extension of time, but that the Surety Company would not be discharged merely by such delay. The verdict was for $15,000, with interest, and the judgment is for $18,507.50.

[1] Two or three questions of minor importance are raised by the Surety Company, but as they are not much insisted on we shall consider only the defenses already referred to. With regard to the contractor's overpayment, we find nothing in the record to contradict the architect's estimate. Indeed, nothing is suggested except the argument that, as it cost a large sum to finish the building, the architect must have put much too high an estimate on the value of the work already done and the material already furnished. But we discover no facts to support the argument, and we cannot agree that direct and positive testimony whose good faith is undisputed may be displaced by inferences of the most general character unsupported by a single detail.

[2, 3] The other defense is also without merit under the particular facts of this case. It is true that one provision of the writing makes

time the essence of the contract, but this is so qualified by other provisions that extensions of time were evidently foreseen as possible and were taken into account. We may pass without comment the question how far the liability of a surety for hire would be affected by giving the contractor an extension of time; in our opinion this question is not now presented, for the surety here did not become bound until after the time limit had been disregarded by the parties themselves, and therefore after the provision just referred to had practically ceased to exist. In other words, there was no change of the contract after the bond was given; the change had already taken place, and the surety's obligation was assumed with reference to the situation as the parties had made it for themselves. But, from any point of view, the essential matters for decision were whether there had been any material changes in the contract after the surety company became bound, and (if such changes had been made) whether the surety had been prejudiced thereby. On these matters the jury received definite instructions, and the verdict has settled in favor of, the plaintiff whatever dispute may have existed concerning the facts.

We find no reversible error, and direct the judgment to be affirmed.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes